**ADANTÉ D. POINTER, ESQ., 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**
1901 Harrison St., Suite 1140
Oakland, California 94612
Tel: (510) 929-5400
Email: APointer@LawyersFTP.com
Email: Pbuelna@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROXANNE MORALES, individually; SESELIE MCKNIGHT, individually and as successor-in-interest to Decedent AUGUSTINE MORALES;<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SACRAMENTO, a municipal corporation; JEREMIAH JARVIS, in his individual capacity as a law enforcement officer for the CITY OF SACRAMENTO; and DOES 1-50, inclusive.<br>    Defendants. | Case No.:<br><br><u>COMPLAINT FOR DAMAGES</u><br>(42 U.S.C §1983)<br><br><u>JURY TRIAL DEMANDED</u> |

# INTRODUCTION

1. On the evening of November 14, 2020, Augustine Morales was attending a boxing event held in a Sacramento warehouse. At some point, an unidentified individual brandished a gun inside the warehouse, while Mr. Morales was outside of the warehouse.

2. Sacramento Police Department Sergeant Jeremiah Jarvis happened to be nearby when the gunman inside the warehouse began firing shots. Before Sgt. Jarvis could get inside the warehouse to ascertain who was firing the shots, he encountered Mr. Morales hiding behind a car with his back turned to the officer. Mr. Morales had drawn his legally registered, unloaded firearm in self-defense and was holding it by his side as he hid from the shooter.

3. Sgt. Jarvis approached Mr. Morales from behind and was absolutely silent: he did not identify himself as law enforcement, give any commands or issue any warnings to Mr. Morales. In short, Sgt. Jarvis never gave Mr. Morales a chance. Sgt. Jarvis shot Mr. Morales several times in the back. The first screenshot below is taken from Sgt. Jarvis' body-worn camera footage when he fired and the second screenshot is from the warehouse's security camera footage. Both images show that Mr. Morales' arms were at his side when Sgt. Jarvis shot.





4. Mr. Morales had not even turned in Sgt. Jarvis' general direction before he was shot and appeared completely unaware of the officer's presence. Mr. Morales dying words to Sgt. Jarvis were — "I didn't shoot nobody, I didn't shoot nobody." It is a true and damning statement. The officer let the unidentified gunman who opened fire into a crowd of people go free and shot an innocent man in the back.

5. Tragically, Mr. Morales was pronounced dead soon after. Plaintiffs are now forced to live without a loving son, father, and brother.

## JURISDICTION

6. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in SACRAMENTO, California, which is within this judicial district. Title 28 United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

7. Decedent AUGUSTINE MORALES was a resident of Sacramento County and a citizen

of the United States.

8. Plaintiff ROXANNE MORALES is a competent adult and sues in her individual capacity. Plaintiff ROXANNE MORALES is the biological mother of Decedent. Plaintiff ROXANNE MORALES brings these claims individually on the basis of 42 USC §§1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only their rights, but also others' civil rights of great importance.

9. Plaintiff SESELIE MCKNIGHT is a competent adult and sue both in her individual capacity and as co-successor-in-interest to Decedent AUGUSTINE MORALES. Plaintiff SESELIE MCKNIGHT is the biological daughter of Decedent. Decedent AUGUSTINE MORALES died unmarried. Plaintiff SESELIE MCKNIGHT brings these claims individually and on behalf of Decedent AUGUSTINE MORALES pursuant to California Code of Civil Procedure §§377.20 et seq. and 377.60 *et seq.*, which provide for survival and wrongful death actions. The wrongful death and survival claims survive the death of AUGUSTINE MORALES.; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure §377.62. Plaintiff also brings her claims on the basis of 42 USC §§1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only their rights, but also others' civil rights of great importance.

10. Defendant CITY OF SACRAMENTO ("Defendant City") is and at all times herein mentioned a municipal entity duly organized and existing under the laws of the State of California that manages and operates the SACRAMENTO POLICE DEPARTMENT.

11. Defendant JEREMIAH JARVIS was, and at all times herein, is a police officer for the

City of Sacramento and is sued in his individual capacity.

12. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities when ascertained. Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth.  Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and false arrests.  Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.  Plaintiffs will ask leave to amend this complaint subject to further discovery.

13. In doing the acts alleged herein, Defendants and each of them, acted within the course and scope of their employment for CITY OF SACRAMENTO.

14. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

15. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

16. Plaintiffs served timely government tort claims which were rejected by operation of law.

## FACTUAL ALLEGATIONS

17. On the night of November 14, 2020, Augustine Morales was one of many attendees at "Gunz Down, Gloves Up: Northside Edition", a community anti-gun violence event with food,

music, and an unsanctioned boxing match. The event was hosted in a North Sacramento warehouse that is accessible from Juliesse Avenue.

18. The event had not received the necessary legal approval from the California State Athletic Commission or the City of Sacramento, nor did it comply with the applicable COVID-19 restrictions that had been implemented. Nevertheless, the Sacramento Police Department did not shut down the event.

19. At some point, an unidentified individual brandished a firearm, causing many attendees to flee. Mr. Morales was outside the warehouse, hiding behind cars parked at the venue.

20. Footage from the body-worn camera (BWC) of Sacramento Police Department Sergeant Jeremiah Jarvis showed that he was on-scene for several minutes attempting to ascertain the nature of the event.

21. Eventually, an attendee told Sgt. Jarvis, "There's somebody in there with a gun." When Sgt. Jarvis asked the attendee what the gunman looked like, the man told him it was a "Mexican guy." The man then urgently told the officer, "Go in there, go in there" in reference to the warehouse, indicating that the unidentified gunman was inside the building.

22. As Sgt. Jarvis walked toward the warehouse, gunfire erupted from inside the warehouse. Sgt. Jarvis ran towards the building with his weapon drawn.

23. Sgt. Jarvis then encountered Mr. Morales outside the warehouse hiding from the gunman behind a car with his back to the officer. Mr. Morales had drawn his legally registered firearm in self-defense and was holding it by his side.

24. Sgt. Jarvis briefly glimpsed the gun in Mr. Morales' hands. Mr. Morales was slowly backing away from the gunman inside the warehouse with his hands at his side when Sgt. Jarvis ran up behind him.

25. Sgt. Jarvis was silent - he did not identify himself as law enforcement, give any commands or issue any warnings to Mr. Morales. In short, Sgt. Jarvis never gave Mr. Morales a

chance. Instead, in total disregard to the fact that Sgt. Jarvis had been told the gunman was inside the warehouse, BWC footage showed that he immediately began firing into the back of Mr. Morales. Sgt. Jarvis did not even stop running before he began shooting, but continued firing as he moved around Mr. Morales in a circular path.

26. At the time he was shot, Mr. Morales appeared completely unaware of the sergeant's presence and remained facing the opposite direction of the sergeant without any movements suggesting that he was turning in his direction.

27. Sgt. Jarvis shot Mr. Morales numerous times in the back. Mr. Morales was dying between two cars, but managed to tell the sergeant, "I didn't shoot nobody, I didn't shoot nobody." Mr. Morales's registered firearm had fallen under one of the nearby cars. When Sgt. Jarvis commanded Mr. Morales to "drop the gun", Mr. Morales immediately did so. He slid the gun across the pavement to Sgt. Jarvis, further demonstrating to the officer that he was not a threat, even after being shot.

28. Mr. Morales' firearm, a Smith & Wesson 9 mm pistol, was legally registered to him. It is a factual impossibility that Mr. Morales fired the shots heard by Sgt. Jarvis; the magazine of his firearm was found near his car, approximately 75 feet away. The weapon also had a magazine safety which prevent it from being able to fire a chambered round without the magazine. Furthermore, none of the shell casings at the scene came from Mr. Morales' firearm, and a gunshot reside test taken on Mr. Morales found that he had not fired a weapon.

29. After Sgt. Jarvis repeatedly shot him, Mr. Morales remained on the ground, bleeding out, for more than two minutes, while the officer stood over him with his gun drawn and attendees walked past. At least one attendee stepped over Mr. Morales in an attempt to get into his vehicle.

30. Tragically, Mr. Morales soon succumbed to the gunshot wounds and was pronounced dead on November 14, 2020, after being transported to UC Davis Medical Center.

## DAMAGES

31. As a direct and proximate result of each of the Defendant's unreasonable and excessive force, Decedent and Plaintiffs suffered injuries, emotional distress, fear, terror, anxiety, humiliation, and loss of sense of security, dignity, and pride as United States Citizens.

32. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others.

    a. Wrongful death of AUGUSTINE MORALES;

    b. Hospital and medical expenses;

    c. Coroner's fees, funeral and burial expenses;

    d. Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    e. Pain and Suffering, including emotional distress (by all Plaintiffs, based on individual §1983 claim for loss of familial association);

    f. AUGUSTINE MORALES' conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

    g. AUGUSTINE MORALES' loss of life, pursuant to federal civil rights law; and

    h. Violation of constitutional rights;

    i. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

33. The conduct of Defendants CITY OF SACRAMENTO, JEREMIAH JARVIS and DOES 1-50 was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of

AUGUSTINE MORALES, Plaintiffs, and the public. Plaintiffs are therefore entitled to an award of punitive damages against Defendant JEREMIAH JARVIS and DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourth Amendment – Excessive Force under 42 U.S.C. Section 1983)**
*(Plaintiff MCKNIGHT as successor-in-interest to Decedent's survival claim against Defendant JARVIS)*

34. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

35. When Defendant Jarvis shot Decedent, Decedent was not a credible threat, as he was facing away from the Defendant and hiding behind a car from an unknown gunman. Defendant's conduct deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution.

36. As a result of this misconduct, Defendant Jarvis is liable for Decedent's injuries.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**Violation of Plaintiff's 14th Amendment Rights**
*(Plaintiffs Against Defendant JARVIS)*

37. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

38. Defendant Jarvis' use of deadly force when he shot Mr. Morales in the back as he hid from an active shooter was done without providing a verbal warning. Defendant Jarvis's use of deadly force was in reckless disregard for Decedent's right to be free from excessive force. Furthermore, the Defendant's decision to repeatedly shoot Mr. Morales in the back without any

attempt to de-escalate the situation shocks the conscience. Once Mr. Morales fell to the ground and was bleeding to death, Defendant Jarvis failed to stop his cruelty. Mr. Morales was in obvious desperate need of medical attention, gasping to the Defendant that he had not shot anyone while he struggled to breathe. Instead of helping him, Defendant Jarvis simply watched him bleed out on the ground as he lay motionless for approximately two minutes. Defendant's conduct violated the Fourteenth Amendment on several basis including, but not limited to:

   a. Plaintiffs' individual Fourteenth Amendment right to familial association with Decedent Augustine Morales

   b. Decedent Augustine Morales' right to medical attention for his serious medical needs

   c. Decedent Augustine Morales' right to due process protection given the fact that Defendant Jarvis' conduct shocked the conscience when he shot Decedent Augustine Morales in the back repeatedly before announcing the presence of law enforcement or issuing any commands.

39. As a direct and proximate result of Defendant Jarvis' conduct as described above, Plaintiffs are entitled to damages, penalties, costs, and attorneys' fees as set forth in paragraphs above.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**Supervisory and Municipal Liability for Unconstitutional Custom or Policy (Monell)–42 U.S.C. section 1983**
*(Plaintiffs both as successor-in-interest to Decedent's survival claim and individually against Defendant CITY OF SACRAMENTO and DOES 1-50)*

40. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

41. Plaintiffs are informed and believe and therein alleges that the CITY OF SACRAMENTO Police Department exhibits a pattern and practice of using excessive force and misconduct against citizens and despite these incidents, none of the Officers are ever found in violation of department policy or disciplined, even under the most questionable of circumstances.  CITY OF SACRAMENTO Police Department's failure to discipline or retrain the Defendant Officers is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting deaths and injuries is a proximate result of the CITY OF SACRAMENTO Police Department's failure to properly supervise its Officers and ratify their unconstitutional conduct.  Plaintiff is informed, believe and therein allege that the following instances are examples of the CITY OF SACRAMENTO'S pattern and practice of condoning misconduct by failure to discipline:

   a. On March 28, 2018 Sacramento Officers shot and killed Stephon Clark, alleging that he was armed, when it turned out all he had was a cell phone.[1]

   b. On March 6, 2017, Sacramento Officers Ismael Villegas, Casey Dionne and Michael Hight chased an unarmed, John Hernandez, (who had been essentially loitering in front of a convenient store) into a hospital hallway where they tased, beat and used their body weight to compress Hernandez until he asphyxiated. Two witnesses testified that they had overheard Officer Villegas tell Hernandez he was going to "fuck [him] up" with a baton raised in his hand. The officers put Mr. Hernandez into a coma. *John Hernandez, et al. v. City of Sacramento*, (E.D. 2017) Case No: 2:17-cv-02311-JAM-DB.

---

[1] "Officers who killed Stephon Clark reveal new details about the night he died"
https://www.cnn.com/2019/03/07/us/sacramento-stephon-clark-shooting/index.html

c. The City of Sacramento paid $550,000 in the case of Nandi Cain, where, in April 2017, Sacramento Police Officer Anthony Figueroa choke slammed Nandi Cain and punched him in the face several times for jaywalking.[2]

d. On July 11, 2016, Sacramento Officers Tennis and Loyoza tried to hit a mentally ill person, Joseph Mann, two times with their police vehicle, before getting out of their car and shooting Joseph Mann to death. Both officers left the force following the incident.[3]

e. On July 21, 2020 Sacramento officers shot and killed another young man, Jeremy Southern, at a state college campus once while he was standing and a second time in the back while Southern was bleeding out and dying on the ground.

42. Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants, and Does 1-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers. Sacramento Police Officers shot unarmed Decedent Jeremy Southern because they had the unreasonable fear that the already injured Decedent could crawl 10-15 feet to a gun, pick it up, and fire at officers who had already secured a position of cover.

43. Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants and Does 1-50, and/or each of them, encouraged these officers to continue their course of

---

[2] "Man beaten by Sacramento cop after jaywalking stop settles his case for more than money"
https://www.sacbee.com/latest-news/article208138724.html
[3] "Controversial shooting of black man by Sacramento police ends with officers leaving force"
https://www.sacbee.com/news/local/crime/article180804391.html

misconduct, resulting in the violation of Decedent's and Plaintiff's rights as alleged herein.

44. As against Defendant CITY OF SACRAMENTO, DOES 1-50 in his/their capacity as police officer(s) for the City of Sacramento, Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF SACRAMENTO POLICE DEPARTMENT tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.  This is reinforced by the fact that the officers in the aforementioned excessive force incidents s well as the one underlying this complaint have not been disciplined and/or re-trained.

45. The unconstitutional actions and/or omissions of Does 1-50, as well as other officers employed by or acting on behalf of Defendant CITY OF SACRAMENTO on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the Sacramento Police Department stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for CITY OF SACRAMENTO:

   a. To cover-up violations of constitutional rights by any or all of the following:

   i. by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force;

   ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

   iii. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

      b.      To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

      c.      To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.;

      d.      To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs to prevent recurring and foreseeable violations of rights of the type described herein.

46.   Defendants CITY OF SACRAMENTO and DOES 26-50 failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Does 1-25, and other SPD personnel, with deliberate indifference to Plaintiff's and Decedent's constitutional rights, where were thereby violated as described above.

47.   The unconstitutional actions and/or omissions of Defendant DRAKE WALKER ,Does 1-25, and other SPD personnel, as described above, were approved, tolerated and/or ratified by policy-making officers for the SPD.  Plaintiff is informed and believes and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the City of Sacramento and the SPD, and that such policy makers have direct knowledge of the fact that the killing of Jeremy Southern was not justified, but rather represented an unconstitutional use of unreasonable, excessive, and deadly force.  Notwithstanding this knowledge, the authorized policy makers within the City of Sacramento and SPD have approved Officer Drake's shooting of Jeremy Southern, and have made a deliberate choice to endorse the shooting of Jeremy Southern and the basis for that shooting.  By doing so, the authorized policy makers within the City of Sacramento and the SPD have shown affirmative

agreement with the actions of Does 1-25, and have ratified the unconstitutional acts of Does 1-25.

48. The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendant City of Sacramento and Does 26-50, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth in Cause of Action 1-3, above.

49. Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and Decedent and others would be violated by their acts and/or omissions.

50. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants City of Sacramento and Does 26-50 as described above, plaintiff sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 21-23 above.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Violation of CALIFORNIA CIVIL CODE § 52.1 "The Bane Act")**
*(Plaintiffs individually and as Plaintiff McKnight as successors-in-interest to Decedent's survival claim against Defendants CITY OF SACRAMENTO and JARVIS)*

51. Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

52. Plaintiffs bring this "Bane Act" claim individually for direct violation of their own

rights (familial association claim) and Decedent's rights (right to be free from excessive force), and Plaintiffs bring this Bane Act claim as a survival claim pursuant to California Code of Civil Procedure §377.20 *et seq.* for violation of Decedent's rights.

53. By their conduct described herein, Defendants, acting in concert/conspiracy, as described above, violated Plaintiffs' and rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

   a. Decedent's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, §13 of the California Constitution;

   b. Decedent's right to be free from excessive and unreasonable force in the course of arrest or detention, as secured by the Fourth Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution;

   c. Decedent's right to medical attention for his serious medical need under the Fourteenth Amendment;

   d. All Plaintiff's right to be free from wrongful government interference with familial relationships, and Plaintiffs' and Decedent's right to companionship and society with each other, as secured by the First and Fourteenth Amendments to the United States Constitution.

54. Defendants used unlawful, excessive and deadly force which violates the Fourth Amendment and also violates the Bane Act. Defendants' use of unlawful force against Decedent, in and of itself, satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.

55. Further, any volitional violation of rights done with reckless disregard for those rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act. All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiffs' rights; none was accidental or merely negligent.

56. Alternatively, Defendants violated Plaintiffs' and Decedent's rights by the following

conduct constituting threat, intimidation, or coercion that was above and beyond any lawful seizure or use of force:

    a. Using excessive, unreasonable, and unjustified force against Decedent without ever issuing commands or identifying themselves as law enforcement;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
**(Battery — Violation of CALIFORNIA PENAL CODE § 242)**
*(Plaintiff MCKNIGHT as successor-in-interest to Decedent's survival claim against Defendants CITY OF SACRAMENTO and JARVIS)*

57. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

58. Defendant Jarvis, while working as an officer of the Sacramento Police Department, and acting within the course and scope of his duties, intentionally shot Decedent in the back without identifying himself as an officer, issuing any commands or otherwise attempting to de-escalate the situation.

59. As a result of Defendant Jarvis's shooting, Decedent suffered fatal physical injuries. Defendant Jarvis did not have legal justification for using deadly force against Decedent. The use of deadly force while carrying out his official duties was an unreasonable use of force and thus constituted battery.

60. Defendant City of Sacramento is vicariously liable, pursuant to California Government Code §815.2, for the violation of rights by its employees and agents.

61. As a direct and proximate result of Defendant Jarvis' assault and battery of AUGUSTINE MORALES, Decedent sustained injuries and damages, and is entitled to relief as set forth above.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION
**(Negligence – Wrongful Death & Survival Action)**
*(Plaintiff MCKNIGHT as successor-in-interest to Decedent's survival claim against Defendant CITY OF SACRAMENTO and JARVIS)*

62. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

63. At all times, Defendants owed Plaintiff and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

64. At all times, Defendants owed Plaintiff and Decedent the duty to act with reasonable care.

65. These general duties of reasonable care and due care owed to Plaintiff by Defendants include, but not are limited to, the following specific obligations:

   a. to refrain from using excessive and/or unreasonable force against AUGUSTINE MORALES;

   b. to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

   c. to refrain from abusing their authority granted them by law; and

   d. to refrain from violating Plaintiff's and Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

66. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and Decedent.

67. Defendant CITY OF SACRAMENTO is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code §815.2.

COMPLAINT FOR DAMAGES
- 18

68. As a direct and proximate result of Defendants' negligence, Decedent and Plaintiffs sustained injuries and damages, and, against each and every Defendant, is entitled to relief as set forth above and per Code of Civil Procedure §§377.20 et seq. and 377.60 *et seq.,* which provide for survival and wrongful death actions.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

69. Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, against each and every Defendant, jointly and severally, as follows:

1. For general damages in a sum to be proven at trial;

2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3. For punitive damages against DEFENDANT JARVIS and DOES 1-25 in a sum according to proof;

4. All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

5. For cost of suit herein incurred; and

6. For such other and further relief as the Court deems just and proper.

/

Date: November 10, 2021             Respectfully submitted,

                                    **POINTER & BUELNA, LLP**
                                    **LAWYERS FOR THE PEOPLE**

                                    /s/ Patrick Buelna
                                    PATRICK BUELNA
                                    COUNSEL FOR PLAINTIFFS